CARAWAY, J.
 

 11 Johnny Williams was charged with aggravated rape, in violation of La. R.S. 14:42, aggravated kidnapping, in violation of La. R.S. 14:44, and false imprisonment while armed with a dangerous weapon, in violation of La. R.S. 14:46.1. The state dismissed the aggravated kidnapping charge and the remaining two matters were tried before a jury which convicted Williams as charged. The court sentenced Williams to mandatory life imprisonment for the aggravated rape, and to a concurrent five-year sentence for the false imprisonment conviction. On appeal, Williams contests various procedural rulings of the court. Finding no merit to his arguments, we affirm Williams’s convictions and sentences.
 

 Facts
 

 Williams and the victim, T.L., were Monroe residents who had a child together. Their relationship continued until sometime in 2006, when T.L. ended the relationship and began seeing another man. T.L. then initiated child support proceedings against Williams.
 

 On September 8, 2006, T.L. drove her friend’s car to a gas station in Monroe. As she got out of her car, she saw Williams pull up. Williams approached T.L. and demanded that she go with him. When Williams reached under his car seat as if he had a gun, T.L. agreed to go with him.
 

 T.L. followed Williams to his mother’s house, and the two got into the defendant’s car. They went for a drive, and the defendant became angry, telling T.L. that “if he couldn’t have me, no one could.” They returned to Williams’s mother’s home, and the defendant made T.L. go inside. Once 12inside, the defendant bound the victim’s ankles, wrists, forearms and thighs with duct tape. Williams was aimed with a knife, which he used to cut the duct tape as he bound the victim. He then put duct tape over T.L.’s mouth and had sexual intercourse with T.L. without her consent.
 

 Williams removed some of the duct tape and began to talk to T.L. Williams became angry again, fought with the victim and again bound T.L. with duct tape. Williams picked up T.L., moved her to the side of the bed and covered her with a blanket and then left the room. After about two hours, Williams’s mother came home and discovered T.L.
 

 Williams’s mother extracted a promise from T.L. not to call the police in exchange
 
 *351
 
 for the return of the victim’s missing car. After several hours, the car was returned, but T.L. went to the police. Police arrested Williams and these charges resulted.
 

 Williams opted for a jury trial. After the jury convicted him as charged and the trial court denied motions for new trial and post-verdict judgment of acquittal, Williams lodged this appeal.
 

 Discussion
 

 In Williams’s first assignment of error, he argues that the trial court erred in denying his challenge for cause of juror J.R.B. Specifically, Williams argues that the juror’s answers as a whole do not support the court’s conclusion that the juror could put aside an incident in her past and serve as a fair juror.
 

 During
 
 voir dire,
 
 the prosecutor asked the jury panel whether anyone had been the victim of a sex offense. Juror J.R.B. responded in the |3affii-mative. When asked if she could talk about it, she responded “I’d rather not.” The prosecutor explained that the issue could be discussed outside the presence of the rest of the jury. J.R.B. responded “that’s fine.” During later questioning, this juror stated she believed that more than half of the victims of sex offenses would have known their assailant prior to the offense.
 

 When notified of the life imprisonment penalty for aggravated rape, J.R.B. said the severity of the penalty was important to her; she said “I don’t think it would color my decision, but I think that I would be more-I’d probably have to have more facts than....” She said that she would probably hold the state to a higher standard because of the harsh penalty.
 

 During questioning by the defense attorney, J.R.B. said she could adhere to the “beyond a reasonable doubt” standard of proof. She also said she believed people generally presume others to be innocent.
 

 In the trial court’s questioning of J.R.B., she was able to discuss some of the details of the sexual assault she experienced twelve years before when she was twelve years old. The court’s questioning continued:
 

 Court: Did that person- — was that person ever held accountable or confronted on it?
 

 J.R.B.: No.... Later on down the line about ten years. It’s been twelve now. So about ten years later I met his brother who apologized, but by that point I had already forgiven him. And you know it’s just kind of — -it’s in the past. It’s made me who I am and I’m okay.
 

 Court: Has it made you stronger?
 

 J.R.B.: Yes. Absolutely.
 

 Court: The defendant in this case, Mr. Williams, has the absolute right to have a trial by jury and he’s | ¿requested such. Should Mr. Williams feel uncomfortable with your experiences having you potentially as a juror that he would favor and say, I think she’d be fair, but I’m worried about how she may feel about the victim. Can you factor that out or would you judge the case just on the merits or would you be a good juror or how do you feel about that?
 

 J.R.B.: I think I’d be a good juror. I mean I’m not — I think — I’m at a loss for words. I think I’d be fair.
 

 Court: If the incident is more than just a touching as you have experienced, is it something that you think during the trial you may revisit it in your mind your experiences and say I won’t let this happen to anyone else or would you just simply be able to say, this is the evidence and I have to judge it and they didn’t prove it or they did prove it.
 

 
 *352
 
 J.R.B.: I have to keep it separate. I mean, I’ve been doing that for a long time.
 

 Court: Do you feel uncomfortable being asked to sit in judgment on this type case or do you think that you can— you would just soon be here as you would on a burglary case?
 

 J.R.B.: Honestly, not really. I feel like I could look — I could tell more if a girl is lying than I would be able to know. And I may be completely wrong for saying, that. But I think that if there’s any reason or any kind of evidence or doubt or any other reason that she would be saying the things that she’s saying, then you know—
 

 Court: You’re a good judge of character?
 

 J.R.B.: I would think so on this particular case.
 

 Court: And can you follow the law in a sense of placing your personal situation, however horrific it was and I’m sure that it was, can you give Mr. Williams a fair trial if you’re selected as a juror in this case?
 

 l.-jJ.R.B.: I believe so.
 

 Neither of the attorneys had any questions for J.R.B.
 

 Later, defense counsel challenged J.R.B. for cause, arguing that the juror would bring her own experience into the case outside of the evidence. The prosecutor objected, citing the juror’s assertions that she could be fair and would not let the incident interfere with her judgment. The court denied the challenge, stating:
 

 [J.R.B.] was very candid. She indicated that she was 12. She could put it behind her. This was not a case that was actually charged. She had forgiven the individual. Her [sic ] brother spoke to her. She was further asked about wanting or needing more facts after the court explained to her the hypothet that was posed to the first two panels. She agreed that she could follow' the law, would follow the law. And I believe she was rehabilitated to the extent that the court feels she could be fair and would be able to mentally put her issues behind her that occurred some ten, eleven years ago. So the court will deny your challenge for cause based on her rehabilitation in her own testimony in this court.
 

 Defense counsel objected to this ruling. Williams later used his twelfth and last peremptory challenge to remove J.R.B.
 

 La. C. Cr. P. art. 797 provides, in part: The state or the defendant may challenge a juror for cause on the ground that:
 

 (2) The juror is not impartial, whatever the cause of his partiality.
 

 * * *
 

 (4) The juror will not accept the law as given to him by the court.
 

 Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges.
 
 State v. Cross,
 
 93-1189 (La.6/30/95), 658 So.2d 683. Thus, “[t]o prove there has been reversible error warranting reversal of the | [¡conviction and sentence, defendant need only show (1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.”
 
 State v. Ross,
 
 623 So.2d 643, 644 (La.1993). The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will only be reversed when review of the entire voir dire shows the trial judge
 
 *353
 
 abused his discretion.
 
 State v. Robertson,
 
 92-2660 (La.1/14/94); 630 So.2d 1278,
 
 cert denied,
 
 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998).
 

 As this court recently explained in
 
 State v. Jones,
 
 41,672 (La.App. 2d Cir.1/14/09), 999 So.2d 1156, 1161:
 

 The declaration of an otherwise fair and impartial juror that he or she -was previously the victim of a crime similar to that for which the defendant stands charged does not render the juror incompetent to serve.
 
 State v. Hopkins,
 
 39,730 (La.App. 2d Cir.8/17/05), 908 So.2d 1265,
 
 writ denied,
 
 2005-2253 (La.3/17/06), 925 So.2d 541;
 
 State v. Robinson,
 
 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207.
 

 In the instant case, the trial court engaged the juror in a lengthy colloquy about how her experience as the victim of a sex offense might affect her service as a juror. The trial court was careful not to require the juror to involuntarily revisit the assault. The juror was able to discuss the matter. The juror clearly had some difficulty with the colloquy as she indicated that she would look only at the judge during their exchange and pretend the attorneys were not present. However, her answers to the judge’s questions were direct and not evasive. The juror repeatedly expressed her belief that she could be a fair juror. She said she was “not really” uncomfortable being a juror in a sex offense case, that she had forgiven the 17person who assaulted her, and that she ■would be able to keep her personal experience separate from the evidence presented at this trial.
 

 Prospective jurors, being members of the community, bring with them their life experiences and attendant personal beliefs. A juror is disqualified from service only when the juror’s experiences and beliefs render the juror impartial or unable to accept the law as given by the court. La. C. Cr. P. art. 797. In this case, the juror’s responses as a whole and the entire
 
 voir dire
 
 demonstrate that the juror could be impartial and accept the law as given by the court, so the trial judge did not abuse his discretion by denying the defendant’s challenge for cause to J.R.B. This assignment of error is without merit.
 

 In a supplemental pro se brief Williams also argues that the trial court erred in allowing the indictment to be amended over his objection.
 

 A Ouachita Parish grand jury originally indicted Williams on October 26, 2006, for aggravated rape, aggravated kidnapping and false imprisonment. Trial was eventually set for August 13, 2007. On that date, the court took up a pretrial matter, and then the court proceeded to commence jury selection. At that point, the prosecutor moved to file an amended bill of information which deleted the aggravated kidnapping charge but upgraded the false imprisonment charge to false imprisonment with the use of a weapon.
 

 Williams argues that the trial court erred in allowing the state to amend the charge against him on the day of trial in August 2007. At the time the state filed the amending charge, trial had not yet begun. | sllltimately, however, after various continuances granted to both the defense and the state, trial did not occur until January 2008.
 

 The prosecutor has the authority under La. C. Cr. P. art. 487 to make substantive amendments to an indictment at any time before the beginning of trial, subject to the defendant’s right under La. C. Cr. P. art. 489 to move for a continuance if the amendment led to his prejudice.
 
 State v. Crochet,
 
 05-0123 (La.6/23/06), 931 So.2d 1083. The purpose of a continuance is to protect defendant from surprise or prejudice which may result from such amendment.
 
 State v. Cleveland,
 
 25,628
 
 *354
 
 (La.App. 2d Cir.1/19/94), 630 So.2d 1365. When the State requests an amendment to the bill of information before the first prospective juror is called, the defendant’s remedy is a motion for continuance, not an objection to the amendment.
 
 State v. Ignot,
 
 29,745 (La.App. 2d Cir.8/24/97), 701 So.2d 1001,
 
 writ denied,
 
 99-0336 (La.6/18/99), 745 So.2d 618.
 

 In the instant case, the state upgraded the false imprisonment charge from a misdemeanor to a felony. Although it is clear that Williams was aware that the state had evidence of his use of a weapon during the offense, the trial court recognized the risk of prejudice to the defendant by the amended charge and so granted a continuance in August 2007 to allow time for preparation for trial on the amended charge. The record reflects that the tidal was actually continued for more than five months after the state filed the amended charge. In this situation, Williams has failed to demonstrate prejudice from the procedure employed by the trial court in handling the ^amendment to the charge. La. C. Cr. P. art. 921. Thus, this assignment of error is without merit.
 

 Williams also argues that the trial court erred in allowing the jury to view the trial evidence out of his or his attorney’s presence. At the conclusion of the evidence but prior to closing arguments, the court instructed the jurors that they would be able to view the exhibits if they wished to do so, and the court discussed with the attorneys the procedure to be used. The court informed the jurors that “We [the judge, the defendant and the attorneys] are going to exit the courtroom, turn it over to you. The bailiff may come and go but we will be gone while you view the evidence for as long as you want to.” The judge then asked the prosecutor and the defense attorney whether they had any objection to this plan, and both attorneys responded that they had no objection. The record reflects that “Everyone [was] escorted out of the courtroom while jurors viewing evidence.”
 

 Williams argues on appeal that the court erred by allowing the jury to examine these items outside of the defendant’s presence in violation of La. C. Cr. P. art. 831. However, the right to be present may be waived by the defendant or by his attorney, or by defendant’s voluntary absence or his failure to assert an objection to a discussion held in his absence.
 
 State v. Williams,
 
 34,359 (La.App. 2d Cir.5/9/01), 786 So.2d 203,
 
 writ denied,
 
 01-2275 (La.5/10/02), 815 So.2d 835. Because no objection to the procedure was lodged by defendant at trial, Williams may not complain about the procedure on appeal. La. C. Cr. P. art. 841. Moreover, because | mthe evidence had been admitted at trial in Williams’s presence, Williams has failed to show prejudice in the procedure employed. This assignment of error is without merit.
 

 Decree
 

 For the above reasons, Williams’s convictions and sentences are affirmed.
 

 AFFIRMED.