MARION F. EDWARDS, Judge.
 

 12Pefendant/appellant, Timothy J. Ma-zique (“Mazique”), appeals his conviction and sentence for aggravated incest (Count 1) and pornography involving juveniles (Count 2), violations of La. R.S. 14:78.1 and 14:81.1, respectively. Following trial, Mazique was found guilty as charged. The trial court sentenced him to ten years in the Department of Corrections on Count 1 and one year in the Department of Corrections on Count 2, with the sentence on Count 2 to run concurrently with the sentence on Count 1. This timely appeal followed.
 

 Mazique was charged with the sexual abuse of T.J., his teenaged stepdaughter, from approximately August 2007 until some time before April 2008. He was also accused of videotaping the two of them engaged in sexual activity. C.M., the victim’s mother, found the nude photographs and the videotape on Mazique’s cell phone and, after confronting him, she contacted the police.
 

 At trial, Detective Joseph Lemoine of the St. Charles Parish Sheriffs Office testified that he was contacted by the State police in reference to a complaint from C.M. who had stated that her daughter had been sexually molested by Mazique. The victim stated that her stepfather had come to her bed on a number of instances
 
 *229
 
 and masturbated over her. Mazique’s cell phone was obtained, along with that of IsT.J., and the images were examined. C.M. had taken the memory card from her husband’s cell phone and brought it to the bureau, placing it in Mazique’s computer. The images were of the victim naked, including a video of Mazique and the victim. The video did not show the victim’s face. However, T.J. stated that all of the pictures were of her. She further stated that Mazique had her take nude photographs of herself and forward them to his cell phone. The police also photographed various rooms in the victim’s home. Following the investigation, Mazique was arrested and, after waiving his rights, gave a statement.
 

 C.M. testified that, on April 15, 2008, she had an argument with Mazique after he came home during the early morning and she left for work without telling him goodbye. Mazique telephoned her while she was on the way to work and said that, if she could not tell him goodbye, his other “boos” would do so. After that, C.M. turned around and went home. Because her suspicions were aroused, she went to Mazique’s truck, took his cell phone, and brought it with her to work. At lunch time, when she started looking at the cell phone, she recognized some pictures of a couple of different females. The one that caught her attention was the upper body shot of a topless young woman who was “unusually large” like T.J. She recognized the wallpaper in the background. She also recognized the blouse being worn by the person in the picture as being her daughter’s blouse. C.M. e-mailed those pictures to Mazique’s sister, Dominique Miller, and Ms. Miller agreed that it was definitely T.J.
 

 C.M. left work and picked up T.J. near their house. They drove to Chili’s and sat in the parking lot, where C.M. asked T.J. if she had ever taken nude pictures. At first, T.J. responded negatively, but when C.M. showed T.J. some photographs, T.J. admitted that was her. C.M. asked T.J. how this came about, and T.J. told C.M. she herself had taken the photographs. She also. asked T.J. how they |4got on Mazique’s cell phone, and T.J. told her the story. They went back home and, after he woke up, Mazique asked C.M. if she had his cell phone. She answered affirmatively, told him what she found on his cell phone, and asked him how the photographs got there. Mazique told her that he found the pictures on his computer, and he took a picture of them with his cell phone, thinking that T.J. had been sending them to a boy. C.M. said she did not understand why he kept the pictures on his cell phone so long and why he did not tell her about them. Mazique kept talking about a video and saying it was of an old girlfriend, but C.M. had not examined any videos.
 

 C.M. went back to work the next day and looked at every video on the cell phone. She thought she recognized T.J. in one of them, especially because she thought she heard something on the video. C.M. saw Mazique clearly on the video, and she thought the female looked like T.J., but, since the female was bent over, she had to ask T.J. if that was her. C.M. left work, checked T.J. out of school, and took her to a hotel. C.M. showed T.J. the video, and T.J. started crying immediately. T.J. told C.M. that it was her on the video.
 

 While Mazique was in jail, he wrote C.M. a letter asking her for another chance, and he said he would change. In that letter, he said that he was ashamed, that he was sorry he put her through this, that he made a mistake, and that he took all the blame. C.M. explained that the letter also could have meant that he would change with respect to his substance abuse
 
 *230
 
 problem and that he would no longer commit adultery.
 

 T.J., age 16 at the time of trial, testified that she, her stepfather Mazique, and her mother (C.M.) lived together in a house in Montz in St. Charles Parish. They moved into that house in July 2007. A few months after they moved in, Mazique called her on his cell phone late one night and asked her to let him in the house | r,because the alarm was on. Mazique had a key and T.J. thought he just wanted to be quiet. Mazique, who was drunk, came to her room with a towel, lay next to her, and started “humping” on her. He asked her to play with his nipples while he masturbated on the side of her bed. After-wards, he cleaned “it” up with the towel.
 

 The next day, T.J. asked Mazique if he knew what he had done, and he replied negatively. She told him, and he said he was sorry. Later that day, he came back and asked her to “do it again,” and she complied. Mazique told T.J. that her mother would be upset if she found out what had occurred. A couple of weeks later, the incident reoccurred, and then continued once or twice a week for about a month. At that point, Mazique asked T.J. to masturbate him, which she did. This occurred about once or twice a week for two months. While they were on a trip in Texas, Mazique also performed oral sex on T.J. A few weeks after the trip when they got home, Mazique performed oral sex on T.J. a second time. At some point (between July 2007 and April 18, 2008), Ma-zique asked T.J. to make a videotape of their activities, and she agreed. On the couch in the living room of their house, he videotaped himself masturbating on T.J.’s buttocks while she was lying down. At another time, Mazique sent her a text message. Right afterwards, T.J. took nude photographs of her breasts, buttocks, and vagina while she was in the bathroom at Mazique’s mother’s house and, subsequently, sent those photographs to Mazique’s cell phone.
 

 Mazique showed T.J. the video right after it was taken, and again a few weeks later, saying, “Look at you.”
 

 Kristen Deville testified that she was a computer forensic examiner with the Attorney General’s Office in the Department of Justice and had been employed by them in that capacity since 2006. She explained that, as a computer forensic | r,examiner, she obtained digital evidence and extracted data from it, and that she drew pictures or files needed for a case from that.
 

 Ms. Deville subsequently testified that she found images on Mazique and T.J.’s cell phones, and that she found one image on T.J.’s cell phone that was also on Ma-zique’s cell phone. On Mazique’s phone, she found several nude images of a young girl. She also found a video showing a subject masturbating behind the young girl. She extracted dates and times using the “incase program,” a forensic software program, and she explained that dates and times were automatically extracted along with the photographs. She prepared reports in two different forms: one containing the images, and one without, identifying her most recent report as State’s Exhibit 8, which contained updated dates and times.
 

 The report indicates that photos found on Mazique and T.J.’s cell phones appear to show the victim nude and displaying genitals. It also indicates that Mazique’s cell phone contained a video that appears to show “the suspect” masturbating behind T.J. According to the report, a different picture set showing a woman displaying genitals and a video of a man and woman having sex were found on that cell phone.
 

 Sheena Jones, a Montessori educator at Audubon Charter School, testified that she
 
 *231
 
 and Mazique had been in a relationship since 2000, and that the relationship was a sexual one between 2003 and 2007. Jones testified that she had made the video in question with him. She explained that, in October 2007, she went to the funeral of her nephew, after which she went to Ma-zique’s house where they made the video. She recalled a leather sofa being in the living room and described the layout of the house. Ms. Jones asserted that Mazique had given her directions to the house, that she arrived between 2:00 and 3:00 p.m., and that she left between 3:00 and 4:00 p.m.
 

 |7Marian Brown, Mazique’s mother, testified that her son was promiscuous, but that she did not see any indication that anything was occurring between him and T.J. She further testified that she and T.J. had been very close and that sometimes she stayed with her after school and some evenings when her mother was out of town.
 

 Dominique Miller, Mazique’s sister, testified that she and T.J. were very close, but that she never saw any indication that T.J. was molested. She noted that T.J. was happy and on the honor roll. Mazique told her that he had taken the pictures on his cell phone off the computer screen and did not tell C.M. about it because C.M. was pregnant at the time.
 

 Vanessa Williams, Mazique’s ex-wife, testified that their biological daughter had been molested and that Mazique was devastated about it and became more protective of his biological daughter. She asserted that, when she and Mazique were married and sexually active, they made videos of themselves. Michael Stykes, Mazique’s co-worker at Shell Oil Company and a good friend, testified that a week before Mazique was arrested, he told Stykes that he had photographs of T.J. on his cell phone, and he asked Mr. Stykes what he should do about it. Stykes did not know they were nude photos but advised Mazique to tell T.J.’s mother. When Mr. Stykes asked Mazique why he had not told his wife about them, he replied that she would “trip.” Mr. Stykes did not know they were nude photographs, and he never saw inappropriate activity between Mazique and T.J.
 

 Mazique testified that he had known T.J. since she was a small child, that they had a great relationship, and that he did not molest her or take lewd pictures of her but had found the photographs. He explained that he was promiscuous and had “cheated” on C.M. and that she went through his belongings because she was jealous and did not trust him. He stated that she knew his passwords and how to [^access all his accounts. Mazique admitted having adult pornography on his cell phone, including several adult videos, and that he had nude photographs at work of adult women he had dated. He did not approve of child pornography. He admitted that he and Ms. Jones should not have made that video. He also admitted that he lied to C.M. when he told her that it was an old video.
 

 Mazique stated that, after he found the photographs of T.J., he talked to her about them, and she begged him not to tell her mother. T.J. told him she took them because she was curious about her body. He testified that he found the photographs of T.J. on the computer at home about two weeks before C.M. confronted him and that he did not ask T.J. to take them. He claimed that T.J. did not send those photographs to him. Mazique testified that he was waiting for an appropriate time to tell C.M. about the nude pictures of T.J. because he did not want to upset C.M. due to her pregnancy and that he kept the pictures because he did not want T.J. to delete them before he could talk to her
 
 *232
 
 mother. Mazique told C.M. and Detective Lemoine that he took the photographs of T.J. with his cell phone from the computer.
 

 He explained that he had found other photographs of T.J. on her MySpace page, and that he had set up a fictitious page on MySpace to police her activity. He admitted that he had the opportunity to be alone with T.J. on many occasions, as he did shift work, and there was time between when T.J. got off school and her mother came home from work when they were alone.
 

 On rebuttal, T.J. testified that she never came home from school and found a female visiting Mazique. C.M. testified that the sofa was made of fabric, and not leather. She further testified that Mazique kept his phone locked up.
 

 i
 
 sufficiency of the evidence
 

 Mazique argues that the evidence in this case was insufficient to convict him of Aggravated Incest and of Possession of Pornography. He contends that the only “potential” evidence against him was the victim’s testimony, which was vague. He notes that she was unable to place a time frame on the alleged incidents, and she described them without any detail, despite being 16 years old. He asserts that her testimony was impermissibly bolstered by the introduction of nude, but legal, photographs she had taken of herself. He further asserts that the police failed to obtain any physical evidence of the crimes alleged. Mazique also argues that the evidence was insufficient to support the possession of pornography conviction. He contends that the testimony regarding the pornographic material was contradictory, in that the victim testified she sent the material to Mazique, but Mazique claimed he located the material on the computer. He notes that the State’s expert was unable to tell where the pornography came from or when it was placed on his cell phone. He asserts that a witness testified that she was the woman depicted in the video, and not the victim.
 

 Our standard of review is as follows:
 

 “[i]n reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt....”
 
 [1]
 

 When circumstantial evidence forms the basis of the conviction “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must 1 inexclude every reasonable hypothesis of innocence.”
 
 [2]
 
 In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson.
 
 [3]
 

 
 *233
 
 Mazique was convicted of aggravated incest and pornography involving juveniles. La. R.S. 14:78.1, in pertinent part, provides:
 

 A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following ... step ... relatives: child[.]
 

 B. The following are prohibited acts under this Section:
 

 (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
 

 (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
 

 La. R.S. 14:81.1(A), in pertinent part, provides:
 

 Pornography involving juveniles is any of the following:
 

 111 (1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
 

 (2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
 

 (3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen[.]
 

 Contrary to Mazique’s assertions, the record shows that the victim and her mother recounted the incidents involving him in detail. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.
 
 [4]
 
 Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency.
 
 [5]
 
 Furthermore, the credibility of witnesses will not be reweighed on appeal
 
 [6]
 
 ’ “[T]he
 
 Jackson
 
 standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.”
 
 [7]
 

 Further, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense.
 
 [8]
 
 In the ab
 
 *234
 
 sence of internal contradiction or irreconcilable conflict with physical evidence, 112one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding.
 
 [9]
 

 In the instant case, there is no internal contradiction or irreconcilable conflict with physical evidence, and there was no internal contradiction in the victim’s testimony regarding the incidents of sexual abuse. Additionally, there was the testimony of the victim’s mother who recognized her daughter and Mazique engaged in a sexual encounter in the videotape, and she also recognized the victim in the nude photographs. T.J.’s testimony and that of her mother, apparently found credible by the trier of fact, was sufficient support to find Mazique guilty of the crimes with which he was charged.
 

 Mazique also argues that the victim did not provide time frames of the alleged incidents; however, the record reflects otherwise. The victim testified that the incidents occurred at her home from approximately August 2007 (a couple of months after they moved into that house) until sometime before April 2008 when Mazique was arrested. Although she did not remember exactly when the videotape was made, she knew it occurred at her home in the living room between those times. Further, the dates of the offenses were not essential elements of the crimes, and courts have recognized that, in sexual abuse cases that continue over time, exact dates often cannot be supplied.
 
 [10]
 

 Finally, Mazique contends that the State’s computer expert could not tell where the pornography on his cell phone came from or when it was allegedly placed there. Even if this contention is true, the testimonial evidence of T.J. and C.M. was still sufficient to support the convictions. Viewing the evidence in the | flight most favorable to the State, we find that the State proved the essential elements of the crimes beyond a reasonable doubt, thus satisfying the
 
 Jackson
 
 standard.
 

 MS. DEVILLE’S TESTIMONY
 

 Mazique argues that the trial court erred when it qualified Ms. Deville as
 
 an
 
 expert witness. He contends that her level of knowledge, skill, experience, training, or education was so non-existent that she should never have been qualified as an expert witness. He asserts that the introduction of this purported expert was extremely prejudicial to his case and, thus, he should receive a new trial.
 

 At the start of her testimony, defense counsel objected as to the foundation laid for her to testify regarding her actions. Counsel noted that she had not been tendered as an expert in computer forensic examinations and argued that the State was attempting to use her as an expert without qualifying her to show how she got these images from a hard drive. He contended that some level of expertise needed to be shown before she could do that.
 

 Ms. Deville testified that she had been performing forensic examinations since August 2008 and that she had worked on over seven cases. She said that she had completed over three or four of them by herself and that she had assisted in other cases. Ms. Deville indicated that she had completed an “in-case training class” and received on-the-job training with her coworkers. Ms. Deville explained that she had taken a week-long course in Texas earlier that year and that she had more than 50 hours of on-the-job training, as she
 
 *235
 
 does her job every day. The prosecutor then tendered Ms. Deville as an expert in the field of forensic examination, and the trial judge accepted her as such. Defense counsel noted his objection for the record.
 

 |14As a general matter, under La. C.E. art. 702, “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.”
 
 [11]
 
 In reviewing an expert’s qualifications, the trial judge is vested with wide discretion in determining the competence of an expert witness. Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge whose rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error.
 
 [12]
 

 Here, Ms. Deville did not have extensive experience as a computer forensic examiner. At the time of trial in March 2009, she had been performing forensic examinations for approximately seven months and had worked on approximately seven cases. However, she did testify as to her knowledge, skill, and training in the field of forensic examination. Under these facts, we cannot find that the trial judge abused his discretion in qualifying Ms. Deville as an expert in that field and allowing her to testify regarding her forensic examination in this case. Further, even if the trial judge erred in this regard, the review standard for the erroneous admission of evidence is whether there is a reasonable possibility that the constitutional error complained of might have contributed to the defendant’s conviction.
 
 [13]
 
 The reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Factors to be considered include the importance of the evidence to the State’s case, the presence or absence of | ^additional corroboration of the evidence, and the overall strength of the State’s case.
 
 [14]
 

 In the present case, the victim and her mother provided overwhelming evidence to support the presence of the incriminating evidence on Mazique’s cell phone and the incestuous acts he engaged in with the victim. The jury had ample reason to convict, even without Ms. Deville’s testimony and report. Additionally, the testimony of the victim and her mother was not dependent on the results of Ms. Deville’s work.
 

 This assignment of error is without merit.
 

 JURY CHALLENGES
 

 Mazique argues that the trial court erred when it denied three of his challenges for cause as to prospective jurors, Deanna Faucheaux, Glenn Ebeyer, and C.M. Juror C.M. is not related to the victim or her family.
 

 Article I, § 17 of the Louisiana Constitution guarantees that an accused has a right to full voir dire examination of prospective jurors and to peremptory jury challenges. A district court’s erroneous ruling depriving a defendant of a peremptory challenge substantially violates that
 
 *236
 
 defendant’s rights and constitutes reversible error.
 
 [15]
 
 Prejudice is presumed when the trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts his peremptory challenges.
 
 [16]
 
 Thus, to prevail on appeal, a defendant must demonstrate 1) erroneous denial of his challenge for cause; and 2) use of all his peremptory challenges.
 
 [17]
 
 Additionally, the defendant must show that when the trial court denied his challenge for cause, he used one of his peremptory challenges curatively to remove that juror — thereby reducing his number of peremptory | ,r,challenges — or waive the issue on appeal.
 
 [18]
 
 This is so even in a case where the defendant uses all of his peremptory challenges.
 
 [19]
 

 The record in this case reflects that Mazique did, in fact, exhaust all of his peremptory challenges.
 
 [20]
 
 He also used peremptory challenges to excuse the three prospective jurors at issue here. Therefore, the complaint as to the trial court’s refusal to grant his challenges for cause is properly before this Court. The question on appeal is whether the trial court erroneously denied the challenges for cause as to those three prospective jurors.
 

 A trial court is given broad discretion in ruling on challenges for cause, and such rulings will only be reversed when a review of the entire voir dire reveals the trial court abused its discretion.
 
 [21]
 

 The grounds for a challenge for cause are set out in La.C.Cr.P. art. 797, which, in pertinent part, provides:
 

 The state or the defendant may challenge a juror for cause on the ground that:
 

 (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
 

 (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
 

 |17(4) The juror will not accept the law as given to him by the court[.]
 

 A prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge’s refusal to excuse him on
 
 *237
 
 the grounds of impartiality is not an abuse of discretion, if, after further questioning, the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.
 
 [22]
 
 A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied.
 
 [23]
 

 DeannaFaucheaux
 

 Mazique contends that the trial court erred by denying his challenge for cause to Ms. Faucheaux because Ms. Fau-cheaux is a child protection investigator and, because this is an aggravated incest case, her role in the investigative system, combined with her specialized training, meant she could not be an impartial juror in this case.
 

 During voir dire, Ms. Faucheaux stated that she was a child protection investigator for Orleans Parish, that she was single, and that she had no children. When the jurors were asked if anybody ever had to testify as a witness in a case, Ms. Faucheaux said that she testified once in connection with her job in a case she investigated. She promised she would give Mazique a fair trial. When asked if she could follow the law if it was a situation where the sexual encounter was consensual, Ms. Faucheaux replied affirmatively. She indicated she would not let sympathy enter into her decision-making process. When asked if she would give |isher assurance that she would not hold the State to a standard beyond a reasonable doubt, she answered affirmatively. Ms. Fau-cheaux said she would return a verdict of guilty if the State had proven its case beyond a reasonable doubt.
 

 Ms. Faucheaux was later questioned by defense counsel. She informed him that, as a child protection investigator, she investigated cases of abuse and neglect of children to determine if there were enough grounds to either offer family services or remove the children from the home. Defense counsel asked her if that experience made her lean in favor of the State, and she responded “no,” that her job here was to listen to all of the evidence. When asked if she had specialized knowledge about questioning children, she responded that she was trained to interview children for the purpose of her job, but not to the extent that an advocacy center would.
 

 Defense counsel challenged Ms. Fau-cheaux for cause. He said that she was a child protection investigator, and “based upon the fact of this particular case,” I challenge her for cause. The prosecutor replied that she had no knowledge of this particular case and that being an investigator would be like being a police officer, “it would be the same weight to the jury.” The trial judge denied the challenge without providing reasons.
 

 A prospective juror’s association with law enforcement agencies or personnel will not alone disqualify him from service.
 
 [24]
 
 The fitness of a prospective juror, including an actively employed law enforcement officer, should rightly be determined on a case-by-case basis after consideration of the grounds to support a
 
 *238
 
 challenge for cause set forth in La.C.Cr.P. art. 797.
 
 [25]
 

 119In the instant case, Ms. Faucheaux stated that she was a child protection investigator, which is a profession related to law enforcement. Nevertheless, Ms. Fau-cheaux demonstrated a willingness and ability to decide the case impartially according to the law and evidence, and her responses as a whole did not reveal facts from which bias, prejudice, or inability to render a judgment according to law could be reasonably implied. Accordingly, the trial judge did not abuse his discretion by denying Mazique’s challenge for cause as to prospective juror, Ms. Faucheaux.
 

 Glenn Ebeyer, Jr.
 

 Mazique contends that the trial judge erred by denying his challenge for cause to Glenn Ebeyer, Jr. He argues that Mr. Ebeyer was his co-worker which allowed him to obtain potentially inaccurate information regarding this case. He further argues that Mr. Ebeyer would have been improperly influenced in arriving at his verdict and, therefore, he was not qualified to sit on this case.
 

 During voir dire, Mr. Ebeyer stated that he was a product movement coordinator at Motiva Enterprises. When asked if anyone knew anything about this case, Mr. Ebeyer responded that he had been with Motiva for ten years, that Mazique was an operator in logistics, and that he worked with Mazique for four or five years “on shift.” Mr. Ebeyer said he would not consider himself a friend of Mazique’s, just a co-worker. He indicated that Mazique had not discussed this case with him, but he had heard about it from other people at work.
 

 Mr. Ebeyer heard at the plant that some pornographic material involving Mazique’s relative was found on his phone and in his locker, and he was told that Mazique was escorted from the plant at some point in time. He said that, based upon the information he had heard, he had not formed an opinion as to Mazique’s guilt or innocence, because it was unproven at this point and nothing was factual. |2oMr. Ebeyer stated that he had not seen anything in writing. He asserted that if the State did not prove its case, Mazique was innocent, and he would come back with a not guilty verdict. Likewise, if the State proved its case, he would come back with a guilty verdict.
 

 Mr. Ebeyer also said that, several years prior, the bank his wife managed was robbed, and that his wife was a victim of an armed robbery but that would not have any bearing on this case.
 

 Defense counsel challenged Mr. Ebeyer for cause. He said that Mr. Ebeyer had indicated that his wife worked for an assistant district attorney and that he knew several people and might have information regarding this case. Defense counsel stated that Mr. Ebeyer knew Mazique was terminated and escorted from the plant, facts which might be elicited at trial, adding that Mr. Ebeyer’s wife had been robbed twice. The trial judge denied the challenge for cause without providing reasons.
 

 The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the prosecuting witness, the prosecuting attorney, and the witnesses who may testify at trial. Rather, the law requires that jurors be fair and unbiased.
 
 [26]
 
 A juror need
 
 *239
 
 not be totally ignorant of the facts involved with the case.
 
 [27]
 

 In the instant case, Mr. Ebeyer, Ma-zique’s co-worker, learned some limited information regarding this case at his place of employment. Nevertheless, Mr. Ebeyer demonstrated a willingness and ability to decide the case impartially according to the law and evidence, and his responses as a whole did not reveal |2ifacts from which bias, prejudice, or inability to render a judgment according to law could be reasonably implied.
 

 In light of the foregoing, the trial judge did not abuse his discretion by denying the challenge for cause as to prospective juror, Mr. Ebeyer.
 

 Juror CM.
 

 Mazique contends that the trial judge erred by denying his challenge for cause to C.M. He argues that C.M. could not be an impartial juror because of the nature of the case, considering the fact that her daughter had been sexually molested. For this reason, we refer to this juror by her initials only.
 

 During voir dire, C.M. stated that she had a thirty-year-old daughter and a thirty-one-year-old stepdaughter. When the trial judge asked the prospective jurors whether they or a close friend or relative had been the victim of a crime, C.M. responded that her child had been molested about sixteen years prior, and that no one was ever prosecuted for it. She explained that they had kept it to themselves and went to family counseling. The trial judge asked her whether that experience would affect her ability to sit on this jury in this case. C.M. replied that she did not know, but she had not formed an opinion as to Mazique’s guilt or innocence.
 

 C.M. indicated that, if the prosecutor did not meet his burden, and she was not convinced beyond a reasonable doubt, her verdict would be not guilty. When the prosecutor asked whether she could still be fair to both sides, she said, “I think I can.” When the prosecutor said he needed to know that she would be fair to both sides, she stated, “It’s so hard.” C.M. indicated that if he did not present enough proof, she would find Mazique innocent. The prosecutor asked her again whether she could be fair to both sides, and she said, “I can. It will be hard, but I can.”
 

 Defense counsel then questioned C.M. She indicated that the incident in her life was very traumatic and that she was visibly shaken by it every time she ^thought about it. She agreed that, knowing what this case was about, the incident was going to weigh heavily on her mind. C.M. also stated during voir dire that her cousin had a drug conviction, but she thought the system treated him fairly, and she had no harsh feelings about it. Later on, C.M. said that she would like to hear what Mazique had to say, but, if he did not testify, it would not impact her.
 

 C.M. agreed with the statement that there are many adults who use children for sexual gratification. She indicated that she would not let sympathy enter into her decision-making process. C.M. answered affirmatively when asked for her assurance that she would not hold the State to a standard beyond a reasonable doubt. She indicated that, if the State proved its case beyond a reasonable doubt, she would return a guilty verdict.
 

 Defense counsel challenged C.M. for cause. He said that when' she was questioned regarding the case, she was visibly shaken and very emotional and upset by the whole thing. He pointed out that, based on what happened to her daughter,
 
 *240
 
 she indicated she would have to think very-hard on this case. The trial judge denied the challenge for cause, saying he thought C.M. was rehabilitated and that she said she could be fair in this case.
 

 Prospective jurors with some association to the type of crime on trial are not, solely for that reason, considered partial. During a prosecution for aggravated rape, the Second Circuit found the trial court did not abuse its discretion in denying defendant’s challenge for cause of a prospective juror, despite the fact that the juror had previously been the victim of a sex offense.
 
 [28]
 

 Where a defendant was charged with distribution of cocaine and marijuana, a prospective juror admitted uncertainty whether she could be fair in her | ^deliberations because her brother had a drug conviction.
 
 [29]
 
 The appellate court upheld the trial court’s ruling denying a challenge for cause, noting that the prospective juror agreed that every defendant came to court with a clean slate and that she would give him fair treatment.
 

 In a case from this Circuit, a prospective juror was not excused for cause when she said that she would be upset by sitting on a drug case because she had a former friend who had a drug problem and did not like people who used drugs.
 
 [30]
 
 We found that the prospective juror indicated she could follow the law as instructed and find the defendant not guilty if the State failed to prove its case and, further, that none of her responses indicated she could not be an impartial juror.
 

 In the instant case, C.M. demonstrated a willingness and ability to decide the case impartially according to the law and evidence, and her responses, as a whole, did not reveal facts from which bias, prejudice, or inability to render a judgment according to law could be reasonably implied. C.M. in the instant case indicated she could be a fair juror. Considering the foregoing, the trial court did not abuse its discretion by denying the challenge for cause as to C.M.
 

 EXCESSIVE SENTENCE
 

 Mazique argues that the ten-year sentence on the aggravated incest conviction was constitutionally excessive. He contends the trial judge erred by focusing on his lack of remorse and failure to apologize for a crime he insists he did not commit and on his choice to go to trial. He states that La.C.Cr.P. art 894.1 does not list those as factors to be considered in sentencing and further asserts that the trial judge gave little heed to the economic impact his incarceration would have on his family.
 

 | ^rior to sentencing, the prosecutor presented a victim impact statement from C.M. C.M.’s statement expressed her sense of betrayal and the damaging effect of Mazique’s action on T.J. She further stated that she thought he was not going to stop until he penetrated T.J. and that he had marked T.J.’s menstrual cycles on his calendar for the entire year.
 

 Afterward, Mazique’s mother said that his four children would be hurt financially if their father was incarcerated, and they were dependent upon him as a source of income.
 

 Prior to sentencing, the trial judge stated that Mazique had a number of opportu
 
 *241
 
 nities to “do the right thing.” He could have asked for forgiveness from his wife and from T.J., but rather, continued the abuse. Mazique thought only of himself and not the impact of what he was doing. The trial judge said that Mazique still remained silent at sentencing and had yet to ask T.J. for forgiveness, admit to what he had done, and show some remorse. He stated that any sentence other than the one he was going to impose, would deprecate from the seriousness of the offense. The trial judge then sentenced Mazique to ten years with the Department of Corrections on the aggravated incest charge and ordered him to comply with the sexual offender requirements. Defense counsel lodged no objection to the sentence.
 

 Mazique failed to object to the sentence, and he failed to file a timely motion to reconsider sentence following his sentencing as required by La.C.Cr.P. art. 881.1. The failure to make or file a motion to reconsider sentence or to state the specific grounds on which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only.
 
 [31]
 

 |¾⅛ reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.
 
 [32]
 
 Three factors are considered in reviewing a judge’s sentencing discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts.
 
 [33]
 
 On appellate review of the sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ”
 
 [34]
 

 Under La. R.S. 14:78.1(D)(1), a person convicted of aggravated incest shall be fined an amount not to exceed $50,000, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both. Mazique was sentenced to ten years at hard labor, and no fine was imposed.
 

 This sentence is comparable and even less harsh than that of other defendants in similar situations.
 
 [35]
 
 Further, although there is no requirement that specific matters be given any particular weight at sentencing, the trial judge did consider the economic impact on Mazique’s family, saying that he felt for the family and knew it was going to be difficult for their father to be gone.
 

 Under the facts of this case, the trial judge did not abuse his discretion in sentencing Mazique.
 

 \xERROR patent review
 

 We have reviewed the record for errors patent and note the following:
 

 The sentence on Count 2, pornography involving juveniles, is illegally lenient. Mazique was sentenced on Count 2 to “one year with the Department of Cor
 
 *242
 
 rections” to run concurrently with the sentence on Count 1. Under La. R.S. 14:81.1(E)(1), whoever commits the crime of pornography with juveniles shall be fined not more than $10,000 and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence. In the instant case, the sentence imposed is less than the two-year minimum mandated by the statute, and it does not include the statutory restrictions or fine.
 

 This Court has the authority to correct an illegally lenient sentence under La. C.Cr.P. art. 882. This authority is permissive rather than mandatory. In this case, we vacate the sentence on Count 2 only and remand for re-sentencing in accordance with this opinion.
 

 Further, the trial court’s advisal regarding the prescriptive period under La.C.Cr.P. art. 930.8 was incomplete. The transcript indicates that the trial judge said that “there is a two-year time limitation for the filing of an application for post-conviction relief that you may choose to file and that time period begins to run once all appellate delays have run and this conviction becomes final.” Article 930.8 provides that a defendant has two years from the date the defendant’s conviction
 
 and sentence
 
 become final in which to apply for post-conviction relief. This Court has previously found such an advisal to be incomplete.
 
 [36]
 

 On remand, we order the trial court to properly advise Mazique of the prescriptive period under La.C.Cr.P. art. 930.8 by written notice within ten days ofj^the rendition of this Court’s opinion and then to file written proof in the record that Mazique received notice.
 

 For the foregoing reasons, both convictions, as well as the sentence on Count 1 are affirmed. We remand the matter for re-sentencing on Count 2 and for proper advisal under La.C.Cr.P. art. 930.8, all in accordance with this opinion.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 .In re Burns,
 
 01-1080 (La. 11/28/01), 800 So.2d 833, 840-41 (some citations omitted).
 

 [2]
 

 .In re Burns, supra,
 
 at 841 (citing
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987) and
 
 State v. Porretto,
 
 468 So.2d 1142, 1146 (La.1985)).
 

 [3]
 

 .Id.
 
 at 841 (citing
 
 State v. Davis,
 
 637 So.2d
 
 *233
 
 1012 (La. 1994)).
 

 [4]
 

 .
 
 State v. Rowan,
 
 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
 

 [5]
 

 .
 
 State v. Vincent,
 
 07-239 (La.App. 5 Cir. 12/27/07), 978 So.2d 967.
 

 [6]
 

 .
 
 State v. Rowan, supra.
 

 [7]
 

 .
 
 State v. Vincent, supra; State v. Juluke,
 
 98-341 (La. 1/8/99), 725 So.2d 1291,
 
 writ denied,
 
 01-3171 (La.9/30/02), 825 So.2d 1190.
 

 [8]
 

 .
 
 State v. Vincent, supra.
 

 [9]
 

 .
 
 State v. Ruffin,
 
 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625,
 
 writ denied,
 
 03-3473 (La. 12/10/04), 888 So.2d 831.
 

 [10]
 

 .
 
 State v. Bolden,
 
 03-0266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050.
 

 [11]
 

 .
 
 State v. Higgins,
 
 03-1980 (La.4/1/05), 898 So.2d 1219, 1239,
 
 cert. denied,
 
 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
 

 [12]
 

 .
 
 Id.
 

 [13]
 

 .
 
 State v. Clayton,
 
 570 So.2d 519, 526 (La.App. 5 Cir.1990).
 

 [14]
 

 .
 
 State v. Wright,
 
 04-1038 (La.App. 5 Cir. 2/15/05), 896 So.2d 1172.
 

 [15]
 

 .
 
 State v. Lindsey,
 
 06-255 (La.1/17/07), 948 So.2d 105, 107;
 
 State v. Mickel,
 
 07-47 (La. App. 5 Cir. 5/29/07), 961 So.2d 516, 522,
 
 writ denied,
 
 07-1422 (La. 1/7/08), 973 So.2d 732.
 

 [16]
 

 .
 
 State v. Hensley,
 
 04-617 (La.App. 5 Cir. 3/1/05), 900 So.2d 1, 8,
 
 writ denied,
 
 05-0823 (La.6/17/05), 904 So.2d 683.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 .
 
 State v. Campbell,
 
 06-0286 (La.5/21/08), 983 So.2d 810.
 

 [19]
 

 .
 
 Id.
 

 [20]
 

 . The transcript shows that defense counsel used all of his twelve peremptory challenges to excuse prospective jurors Tucker, Moreau, St. Pierre, C.M., Durapau, Faucheaux, McVay, Ebeyer, Donaldson, Lucky, Horton, and Matherne. La.C.Cr.P. arts. 782 and 799. However, the minute entry does not reflect that defense counsel used a peremptory challenge on Matherne. The transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La. 1983).
 

 [21]
 

 .
 
 State v. Frank,
 
 99-0553 (La. 1/17/01), 803 So.2d 1;
 
 State v. Mitchell,
 
 08-136 (La.App. 5 Cir. 1/13/09), 7 So.3d 720.
 

 [22]
 

 .
 
 State v. Frank, supra.
 

 [23]
 

 .
 
 State v. Kang,
 
 02-2812 (La. 10/21/03), 859 So.2d 649.
 

 [24]
 

 .See, State v. Manning,
 
 03-1982 (La. 10/19/04), 885 So.2d 1044, 1079-80,
 
 cert. denied,
 
 544 U.S. 967, 125 S.Cl. 1745, 161 L.Ed.2d 612 (2005).
 

 [25]
 

 .
 
 Id.
 

 [26]
 

 .
 
 State v. Shelton,
 
 377 So.2d 96, 102 (La.1979);
 
 State v. Williams,
 
 00-1134 (La.App. 5 Cir. 3/28/01), 783 So.2d 566.
 

 [27]
 

 .
 
 State v. Frank, supra. See also, State v. Manning, supra.
 

 [28]
 

 .
 
 State v. Williams,
 
 44,418 (La.App. 2 Cir. 6/24/09), 15 So.3d 348.
 

 [29]
 

 .
 
 State v. Franklin,
 
 43,173 (La.App. 2 Cir. 9/17/08), 996 So.2d 387,
 
 writ denied,
 
 08-2371 (La.5/22/09), 9 So.3d 138.
 

 [30]
 

 . State v. Harris,
 
 03-710 (La.App. 5 Cir. 2/23/04), 868 So.2d 886,
 
 writ denied,
 
 04-0675 (La.9/24/04), 882 So.2d 1166.
 

 [31]
 

 .
 
 State v. Fuller,
 
 07-319 (La.App. 5 Cir. 2/19/08), 980 So.2d 45, 50,
 
 writ denied,
 
 08-0705 (La.10/10/08), 993 So.2d 1282.
 

 [32]
 

 .
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992).
 

 [33]
 

 .
 
 State v. Le,
 
 98-1274 (La.App. 5 Cir. 6/30/99), 738 So.2d 168, 171,
 
 writ denied,
 
 00-2174 (La.4/12/01), 789 So.2d 587
 
 (citing State v. Telsee,
 
 425 So.2d 1251 (La.1983)).
 

 [34]
 

 .
 
 State v. Soraparu,
 
 97-1027 (La. 10/13/97), 703 So.2d 608 (per curiam).
 

 [35]
 

 .
 
 See, State v. Bolden,
 
 04-1000 (La.App. 5 Cir. 3/1/05), 901 So.2d 445,
 
 writ denied,
 
 05-2030 (La.4/28/06), 927 So.2d 279;
 
 State v. Anderson,
 
 95-1688 (La.App. 3 Cir. 5/8/96), 677 So.2d 480.
 

 [36]
 

 .
 
 State v. Grant,
 
 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596.