CLARENCE E. McMANUS, Judge.
 

 | ^Defendant, Nathaniel A. Hernandez, was convicted of possession of a firearm after having been convicted of a felony in violation of LSA-R.S. 14:95.1, and was sentenced to 12 ⅛ years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals, alleging that the trial court erred in failing to grant his jury challenge for cause of juror Eric Rish, and that the evidence presented at trial was insufficient to support the conviction.
 

 The following was adduced at trial. Detective Stanley Brown with the Burglary-Theft Unit of the Jefferson Parish Sheriffs Office testified that he was assisting Detective Steven Abadie in an investigation of which Mr. Timothy Naquin was the subject. On the evening of November 5, 2009, Detective Brown observed Naquin standing on a motel balcony in front of a room with the door open and radioed Detective Abadie to convene at that location. After Abadie and backup had arrived on the scene, Detective Brown approached Naquin with his pistol drawn and Detective Abadie approached with an assault rifle drawn. When | c,Naquin complied with the officers’ commands to place his hands on the balcony railing, Brown ascended the
 
 *330
 
 staircase with Abadie right behind him. After reaching the top of the stairs, as Brown handcuffed Naquin, Abadie made his way into the room through the open door. While Brown was still securing Na-quin on the balcony, he heard Abadie shout, “Let me see your hands!” Seconds later, as soon as Naquin was secured, Brown entered the room with his pistol drawn and heard Abadie exclaim “ninety-five,” the code which indicates the presence of a gun.
 

 Upon entering the motel room, Detective Abadie testified that he observed defendant lying on his side, with his back facing the officer, on the bed farthest from the doorway. Abadie observed defendant make “a move, to what, I don’t know what it was. He made a move to the object that was around his crotch area.” “He motions to his waistband area — I don’t know if he was laying on something, something was in his waistband. I couldn’t tell. It could have been beneath him. I’m not really sure what it was. And he motioned to the side of the bed.” “I wasn’t sure if he was actually taking something from his waistband or, where he was laying, he was shoving something, or was he going to retrieve something.” Unsure of defendant’s intentions, Abadie ordered “Let me see your hands!” Defendant complied and Abadie directed defendant off the bed and onto the wall. As soon as defendant was out of the bed, Abadie noticed the butt of a gun sticking out from between the mattress and the box spring, underneath where defendant had been lying and in the same area where defendant had been reaching. He exclaimed “ninety-five” and secured the weapon for safety reasons since two females and several children were present in the room.
 

 The defense witnesses offered conflicting testimony about defendant’s location within the room when the officers entered. Ms. Krystye Burciaga, | .(defendant’s girlfriend, testified that when Officer Abadie entered the room, she was on the bed farthest from the door and defendant was near the television helping the children link up a video game. She further testified that she had never seen the gun before, did not know it was in the room, and had she known about it, would not have allowed the gun in the room with her one-year old son. Similarly, Naquin testified that when the police entered the room, defendant was “by the TV messing with a video game.” He also maintained that the gun recovered from underneath the mattress was his gun, which he claimed to have placed there earlier in the day without the knowledge of defendant or any other occupant of the room. When asked why he was testifying, Naquin responded, “Because that’s my gun. And it’s the right thing to do. I took my charge for everything else, I ain’t going to see somebody else take a fall for something he didn’t do.” He also admitted to pleading guilty to possession of the gun.
 

 In this appeal, defendant argues that the evidence was insufficient to support his conviction beyond a reasonable doubt. He contends that the officers contradicted one another in their testimony and that their testimony contradicted the testimony of the two defense witnesses. These contradictions, he contends, rendered the evidence insufficient to prove that defendant had possession of the gun. Conversely, the State argues that, regardless of the contradictions and inconsistencies, the evidence was sufficient to convict defendant beyond a reasonable doubt because the evidence was sufficient to establish that defendant had possession of the gun.
 

 In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both,
 
 *331
 
 viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond |Ba reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002);
 
 State v. Mickel,
 
 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534,
 
 writ denied,
 
 10-1357 (La.1/7/11), 52 So.3d 885. Under the
 
 Jackson
 
 standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.
 
 State v. Jones,
 
 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.
 
 Jones,
 
 08-20 at 7, 985 So.2d at 240.
 

 In the instant case, defendant was convicted of possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1. That statute provides, in pertinent part, that “[i]t is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony ... to possess a firearm or carry a concealed weapon.” LSA-R.S. 14:95.1(A). To support a conviction under LSA-R.S. 14:95.1, the State must prove that the defendant possessed the firearm, that the defendant has a prior conviction for an enumerated felony, that the defendant possessed the firearm within ten years of the prior conviction, and that defendant had general intent to commit the crime.
 
 State v. Watson,
 
 08-214, p. 7 (La. App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
 

 At trial, defense counsel stipulated that defendant is a-convicted felon and that his prior convictions qualify under LSA-R.S. 14:95.1. Thus, defendant does not challenge the evidence regarding his prior convictions or the ten-year cleansing period, but disputes the sufficiency of the evidence of possession and intent.
 

 | fiActual possession of a firearm is not necessary to satisfy the possession element of LSA-R.S. 14:95.1; constructive possession is sufficient.
 
 Watson,
 
 08-214 at 7, 993 So.2d at 784;
 
 State v. Blount,
 
 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775. Constructive possession is a legal term describing the situation in which a person who is not in actual possession of an object can nevertheless be considered in legal possession of the thing if it is subject to his dominion and control.
 
 State v. Curtis,
 
 99-45, p. 21 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, 944;
 
 State v. Francis,
 
 95-194, pp. 5-6 (La.App. 5 Cir. 11/28/95), 665 So.2d 596, 600. A person’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared.
 
 Watson,
 
 08-214 at 8, 993 So.2d at 784. However, mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession.
 
 Curtis, supra.
 

 In addition, the jurisprudence has added an aspect of awareness to the offense.
 
 Watson, supra.
 
 Therefore, the State must also prove that the offender knew that a firearm was in his presence and that the offender had the general criminal intent to possess the weapon.
 
 State v. Webber,
 
 99-23, p. 5 (La.App. 5 Cir. 7/27/99), 742 So.2d 952, 955;
 
 Curtis, supra;
 
 see also
 
 State v. Mickel, supra; State v. Storks,
 
 02-754 (La. App. 5 Cir. 12/30/02), 836 So.2d 638, 641.
 

 This Court has recognized that when a gun is found in an area that the defendant has customarily occupied, the courts have generally found this to be evidence of con
 
 *332
 
 structive possession.
 
 State v. Ware,
 
 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 500.
 
 See State v. Michel, supra; State v. Paul,
 
 05-612, pp. 7-8 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 350,;
 
 State v. Johnson,
 
 98-604, 98-605 (La.App. 5 Cir. 1/26/99), 728 So.2d 901,
 
 writ denied,
 
 99-0624 (La.6/25/99), 745 So.2d 1187;
 
 State v. Jackson,
 
 97-1246, p. 7 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 938,
 
 writ denied,
 
 98-1454 (La.10/16/98), 726 So.2d 37.
 

 In the instant case, defendant’s girlfriend testified that she, defendant, defendant’s cousin, and the children had been living in the motel room for “about a month,” while Naquin had been staying in the room for “maybe a week, if that long,” and that the room was registered under defendant’s cousin’s name. Additionally, Officers Brown and Abadie, as well as Naquin, testified that the occupants were residing in the motel room — the room “was cluttered with their clothing and a bunch of objects.” Furthermore, Officer Abadie testified that he observed defendant lying on the bed and made a move toward the area which later revealed the gun; and Officer Brown testified that upon his entry into the room, defendant was in a seated position on the side of the bed, about to stand up.
 

 Although Burciaga and Naquin offered conflicting testimony that placed defendant near the television rather than on the bed, and Naquin stated that the gun belonged to him and was placed in the room without defendant’s knowledge, the jury made a credibility determination and believed the testimony of the State’s witnesses rather than the defense witnesses’ testimony. When the trier-of-fact is confronted with conflicting testimony, fact findings rest solely with that judge or jury, who may accept or reject, in whole or in part, any witness’s testimony.
 
 State v. Watson,
 
 08-214, p. 9 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 785. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.
 
 Id.
 

 It was not established that the bed in which the gun was found was the bed in which defendant regularly slept, but defendant had been residing in the motel room and the gun was found in the bed in which he was lying. Plus, it is well established that a person’s dominion over a weapon constitutes constructive ^possession even if it is only temporary in nature and even if control is shared.
 
 Watson,
 
 08-214 at 8, 993 So.2d at 784. Even assuming that the gun was temporarily in the room and that it did belong to Naquin, it was nevertheless in the room in which defendant resided, if not in the bed in which he slept. Therefore, in accord with the jurisprudence, we find that the temporary presence of the gun and the shared control of the motel room did not preclude the finding that defendant constructively possessed the gun.
 

 Further, to establish possession of a firearm by a convicted felon, proof is required that the offender was aware that a firearm was in his presence, and that he intended to possess the weapon.
 
 State v. Michel,
 
 09-953 at p. 5, 41 So.3d at 535. Such guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence.
 
 Id.
 
 In light of defendant’s proximity to the gun and his movements towards the area from which the gun was later recovered, we find that the jury could have reasonably inferred that defendant was aware that the gun was in his presence and that he intended to possess it. Thus, we find that the evidence presented át trial was sufficient to convince a rational trier of fact that all of the elements of the crime were proven beyond a reasonable doubt.
 

 
 *333
 
 Accordingly, this assignment of error is without merit.
 

 Defendant also alleges that the trial court erred in denying his challenge for cause of Mr. Eric Rish, an officer in the New Orleans Police Department. He contends that Officer Rish should have been struck for cause because he was an active police officer. He further supports his contention by asserting that the court was inconsistent in its granting of challenges for cause by excusing other jurors for cause who allegedly were more impartial than Rish, but then denying the challenge for Rish. In response, the State argues that the law is well settled that a person is not automatically disqualified to serve as a juror simply because of his status as a |flpolice officer. Additionally the State contends that the other jurors, for whom the defense’s challenges for cause were granted, were clearly more biased than Officer Rish and so their excu-sáis for cause were warranted.
 

 Article I, § 17 of the Louisiana Constitution guarantees that an accused has a right to full voir dire examination of prospective jurors and to peremptory jury challenges. A district court’s erroneous ruling depriving a defendant of a peremptory challenge substantially violates that defendant’s rights and constitutes reversible error.
 
 State v. Mazique,
 
 09-845, p. 15 (La.App. 5 Cir. 4/27/10), 40 So.3d 224, 235-36,
 
 writ denied,
 
 10-1198 (La.12/17/10), 51 So.3d 19. Prejudice is presumed when the trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts his peremptory challenges.
 
 Mazique,
 
 09-845 at 15, 40 So.3d at 236. Thus, to prevail on appeal, a defendant must demonstrate 1) erroneous denial of his challenge for cause; and 2) use of all his peremptory challenges.
 
 Id.
 
 Additionally, the defendant must show that when the trial court denied his challenge for cause, he used one of his peremptory challenges cúratively to remove that juror — thereby reducing his number of peremptory challenges — or waive the issue on appeal.
 
 Mazique,
 
 09-845 at 15-16, 40 So.3d at 236. This is so even in a case where the defendant uses all of his peremptory challenges.
 
 Mazique,
 
 09-845 at 16, 40 So.3d at 236.
 

 The record in this case reflects that defendant did, in fact, exhaust all of his peremptory challenges and that a peremptory challenge was also used to excuse the prospective juror at issue here. Therefore, the complaint as to the trial court’s refusal to grant his challenge for cause is properly before this Court.
 

 A trial court is given broad discretion in ruling on challenges for cause, and such rulings will only be reversed when a review of the entire voir dire reveals the | mtrial court abused its discretion.
 
 Mazique, supra.
 
 The grounds for a challenge for cause are set out in LSA-C.Cr.P. art. 797 which provides in pertinent part:
 

 The state or the defendant may challenge a juror for cause on the ground that:
 

 [[Image here]]
 

 (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
 

 A prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge’s refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if, after further questioning, the potential juror demonstrates a willingness and ability to decide the case impar
 
 *334
 
 tially according to the law and evidence.
 
 Mazique,
 
 09-845 at 17, 40 So.3d at 236-37. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied.
 
 Mazique,
 
 09-845 at 17, 40 So.3d at 237.
 

 In the instant case during voir dire, the trial judge asked Officer Rish, “The fact that you are associated with law enforcement, would that affect your ability to give the State and Defense a fair and impartial trial?” Officer Rish responded, “No, it wouldn’t.” In response to defense counsel’s question about whether defendant’s prior convictions and his decision to not testify, if he chose to do so, could be held against him, Officer Rish responded, “I’m impartial either way. And many times, just from being through court cases, a lot of times defendants do not testify. And it’s nothing to hold against them.” Further, in response to defense |T counsel’s question about whether jurors would attribute more credibility to a commissioned police officer than to any other witness, Officer Rish responded, “No.” Again, when asked whether he would automatically believe police officers as opposed to lay witnesses, Officer Rish responded, “No, ma’am, not necessarily. It just depends on the situation or what the circumstances were to an incident.” He further stated:
 

 From a law enforcement perspective, I mean it can go either way sometimes where, after the fact, when we get called out, so we did not witness initially what happened. Sometimes we’re there first hand where we saw everything from the beginning to the end, whereas another witness may have only caught part of it. So, it really depends on the circumstances of the situation.
 

 When asked if he would give any favoritism to a police officer, Officer Rish stated, “Not until I have all the facts, no, ma’am.”
 

 When challenges for cause were being entertained by the court, defendant moved to challenge Officer Rish for cause “simply because of the fact that he’s an active police officer.” The trial court denied the challenge finding that the officer had not said anything that would indicate that he was biased. Thereafter, defense counsel used a peremptory challenge to strike Officer Rish.
 

 In regard to defendant’s first contention, that Officer Rish should have been stricken based on the fact that he is an active police officer, the Louisiana Supreme Court has held that a person is not automatically disqualified to serve as a juror simply because of his status as a police officer.
 
 State v. Jones,
 
 03-3542, p. 11 (La.10/19/04), 884 So.2d 582, 589 (citing
 
 State v. Ballard,
 
 98-2198 (La.10/19/99), 747 So.2d 1077). The supreme court further stated that the fitness of a prospective juror, including an actively employed law enforcement officer, should be determined on a case-by-case basis after consideration of the grounds to support a challenge for cause set forth in LSA-C.Cr.P. art. 797.
 
 State v. Manning,
 
 03-1982, p. 34 (La.10/19/04), 885 So.2d 1044, 1080,
 
 cert. denied,
 
 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
 

 In the instant case, the transcript reflects that the defense sought to strike Officer Rish “simply because of the fact that he’s an active police officer.” As the jurisprudence indicates, this is an impermissible basis for a challenge for cause. For this reason, we find that the trial judge did not abuse his discretion in denying the challenge for cause. Moreover, we have fine that none of Officer Rish’s testimony during voir dire indicated any bias or partiality. He stated that his associa
 
 *335
 
 tion with law enforcement would not affect his ability to give the State and defense a fair and impartial trial; he stated that he would not hold against defendant his prior convictions and his decision not to testify; and he stated that he wouldn’t afford a police officer any more credibility or any more favoritism than any other witness.
 

 In regard to defendant’s second contention, that the trial judge was inconsistent in granting challenges for cause of other jurors while denying the challenge for Officer Rish, a review of the record belies this assertion. There were seven prospective jurors struck for cause. Two were struck because they indicated that they would give more credibility to a police officer’s testimony than to that of a lay witness. Another two were struck because they indicated that they would hold the defendant’s two prior convictions against him. One was struck because she indicated that she would give more credibility to a police officer’s testimony and would hold defendant’s prior convictions against him. The last two were struck by joint motions of the State and defense, one stating that she would favor the testimony of a police officer and that she couldn’t be fair, and the other stating that because she had been the victim of a crime, her ability to give the State and defense a fair and impartial trial would be affected. In contrast, Officer Rish made 113no statements indicating he would be biased or partial in any way. The trial judge even noted that defendant “didn’t say anything that would have rung any bell.” “He was most even keeled.”
 

 Accordingly, we find that the trial judge did not abuse his discretion by denying defendant’s challenge for cause as to prospective juror, Officer Rish. This assignment of error is without merit.
 

 We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990), and note the following that require our attention.
 

 The trial court failed to inform defendant of the prescriptive period within which he must apply for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. Accordingly, we hereby advise defendant that, pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. art. 914 or 922. See
 
 State v. Ramsey,
 
 10-333, p. 10 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42;
 
 State v. Davenport,
 
 08-463, p. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451,
 
 writ denied,
 
 09-0158 (La.10/16/09), 19 So.3d 473.
 

 Second, defendant’s sentence is illegally lenient because the trial judge failed to impose the mandatory fine as required by LSA-R.S. 14:95.1(B), which provides for a fine of not less than $1,000.00 nor more than $5,000.00. However, because the State did not raise the issue of illegality in the trial court or on appeal, we decline to take any corrective action.
 
 State v. Michel,
 
 09-953 at p. 9, 41 So.3d at 537.
 

 Lastly, the commitment is inconsistent with the transcript as it fails to indicate that defendant’s sentence is to be served without benefit of parole, 114probation, or suspension of sentence. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Therefore, to ensure an accurate record, we remand this matter for correction of the commitment to bring it into conformity with the sentencing transcript. The district court is directed to make the entries in the commitment re
 
 *336
 
 flecting this change and the clerk of court is directed to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See LSA-C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). The corrected commitment is also to be transmitted to the Department of Correction’s Legal Department.
 

 For the foregoing, the defendant’s conviction and sentence are affirmed, and this matter is remanded for corrective action as discussed above.
 

 AFFIRMED AND REMANDED