HANS J. LILJEBERG, Judge.
|2On May 9, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Maurice Florant, with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1.[1] On May 10, 2011, defendant pleaded not guilty. On October 25, 2011, a 12-person jury found defendant guilty as charged. On January 4, 2012, the trial court sentenced defendant to imprisonment at hard labor for a term of 15 years without benefit of parole, probation, or suspension of sentence. Defendant’s motion for appeal was granted and the trial court subsequently denied defendant’s motion to reconsider sentence. This appeal follows.
*637 | ¿FACTS
On April 2-3, 2011, Officer Francisco Campos of the Gretna Police Department was on night patrol from 7:00 p.m. to 7:00 a.m. That evening, Officer Campos was patrolling the 1200 block of Burmaster Street in Gretna, Louisiana, an area he had patrolled “for the better part of three years.” In the area is Club J’s, a nightclub known for criminal activity, including gun and narcotics-related offenses. At approximately 2:55 a.m., Officer Campos observed a vehicle exit a parking lot in the area of Club J’s at a high rate of speed and continue down Burmaster Street, unable to stay within its lane. In response, Officer Campos initiated a traffic stop of the vehicle. The vehicle pulled over “relatively quickly” and the officer observed three people inside, prompting him to call for backup.
Upon Officer Campos’ request, the driver of the vehicle provided a Louisiana identification card, identifying him to be co-defendant, Myron Soublet. While conversing with Soublet, Officer Campos observed a firearm next to Soublet’s right leg, tucked into the seat. The officer informed the other officers that a firearm was present and ordered the occupants of the vehicle to make their hands visible. Officer Campos, with the assistance of three officers, removed the occupants from the vehicle. The driver was removed first, patted down, and detained near the rear of the vehicle. Next, Sergeant Scott Zemlick removed the defendant, who was seated in the front seat. Upon doing so, Sergeant Zemlick observed in plain view a firearm on the passenger seat. He testified that he noticed “where the seat kind of makes an ‘L’ there was a two-tone pistol with the barrel pointing towards the door and the grip of the handgun facing up towards the headrest in the crack of the seat.” Officer Campos then walked to the passenger side of the vehicle, where he observed the firearm in plain view on the front passenger seat. Finally, Officer Campos removed the backseat passenger and |4observed a third firearm on the backseat. Defendant and backseat passenger were additionally patted down and detained near the rear of the vehicle.
Officer Campos ran checks on each subject that revealed each had open attachments for his arrest.[2] The check additionally revealed that defendant was previously convicted of manslaughter. Each subject was advised of his Miranda rights and placed under arrest.
Three semi-automatic pistols were retrieved from the vehicle. A Hi-Point .380 pistol was retrieved from the front seat, a Taurus .45 pistol from the front passenger seat, and a Springfield 9mm pistol from the backseat. Each was loaded with multiple rounds.
For the defense, Teniska Smothers-Singleton testified that on the night of April 2, 2011 and early morning of April 3, 2011, she went to Club J’s with Myron Soublet and his friend, Charles. Defendant was not with them. The three friends went to the club in a vehicle that Myron was driving. Ms. Singleton rode in the front passenger seat of the vehicle with her Taurus semiautomatic handgun in her possession. Ms. Singleton testified that she purchased the handgun at BJ’s Pawn Shop in January 2011.[3] When they arrived at the club, she left the handgun under the front passenger seat. Later that evening, when the *638 three friends left Club J’s, Ms. Singleton rode in the vehicle with Myron and Charles. However, when an intoxicated friend pulled up next to them, Ms. Singleton exited Myron’s vehicle and drove her friend’s vehicle, leaving her handgun under the front passenger seat of Myron’s vehicle. Ms. Singleton later learned that Myron and Charles were joined by defendant and that all three were arrested.

\ .DISCUSSION

Assignment of Error Number Three[4]
In defendant’s third assignment of error, he argues that the evidence was insufficient to support his conviction of possession of a firearm by a convicted felon. Specifically, he contends that the State failed to present evidence that he possessed the weapon and that he had the requisite intent to possess it.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
The requirement that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to “the actual trier of fact’s |firational credibility calls, evidence weighing and inference drawing.” State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297 (quoting State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56). “The reviewing court is not permitted ‘to decide whether it believes the witness or whether the conviction is contrary to the weight of the evidence.’ ” Id. It is not the appellate court’s function to re-evaluate the credibility of witnesses or reweigh the evidence. Id.
Defendant was charged with and convicted of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. That statute provides, in pertinent part, that “[i]t is unlawful for any person who has been convicted of a crime of violence as defined in La. R.S. 14:2(B) which is a felony ... to possess a firearm or carry a concealed weapon.” La. R.S. 14:95.1(A). To support a conviction under La. R.S. 14:95.1, the State must prove that the defendant possessed the firearm, that the defendant has a prior conviction for an enumerated felony, that the defendant possessed the firearm within ten years of the *639 prior conviction, and that the defendant had the general intent to commit the crime. State v. Hernandez, 11-146, p. 5 (La.App. 5 Cir. 11/29/11), 82 So.3d 327, 331, writ denied sub nom., State ex rel. Hernandez v. State, 12-33 (La.8/22/12), 97 So.3d 357.
At trial, the State and defense stipulated that defendant was previously convicted of manslaughter[5] on May 12, 2009 and was sentenced to five years imprisonment. Thus, on appeal, defendant does not challenge the evidence regarding his prior conviction or the ten-year cleansing period, but disputes the sufficiency of the evidence regarding the elements of possession and intent.
Actual possession of a firearm is not necessary to satisfy the possession element of La. R.S. 14:95.1; constructive possession is sufficient. Hernandez, 11-146 at 6, 82 So.3d at 331. Constructive possession is a legal term describing the situation in which a person who is not in actual possession of an object can nevertheless be considered in legal possession of the thing if it is subject to his dominion and control. Id. A person’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. Id. However, mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. Id. In addition, jurisprudence has added an aspect of awareness to the offense. Hernandez, supra. Therefore, the State must also prove that the offender knew that a firearm was in his presence and that the offender had the general criminal intent [6] to possess the weapon. Id.
For instance, in State v. Storks, 02-754, p. 9 (La.App. 5 Cir. 12/30/02), 836 So.2d 638, 643, this Court upheld the defendant’s conviction for attempted possession of a firearm by a convicted felon. There, during a traffic stop, three individuals were removed from the stopped vehicle. Id., 02-754 at 3, 836 So.3d at 639. Upon their exit, one of the officers noticed a handgun in the middle of the rear seat where two passengers were seated, one of whom was the defendant. Id. On appeal, this Court determined that because the defendant was seated right next to the gun, he would have noticed it or hit it with his hand. Id., 02-754 at 8, 836 So.2d at 642. “[T]he gun was visible to the defendant and was within his reach and easily accessible.” Id. Thus, this Court concluded that the evidence was sufficient for a jury to find that the defendant was aware of the gun and that the |sgun was under his dominion and control such that he constructively possessed the gun with a general intent to possess it.[7] Id., 02-754 at 9, 836 So.2d at 642-3.
*640 Also, in State v. Allen, 12-412, pp. 1-4 (La.10/26/12), 101 So.3d 41, 42-4, the Louisiana Supreme Court upheld the defendant’s conviction of possession of a firearm by a convicted felon where the weapon was found under the backseat of the vehicle that the defendant was driving. The court determined the evidence was sufficient to convict despite testimony from the defendant’s girlfriend that she owned the vehicle and the weapon, and that she had placed the weapon under the backseat cushion without the defendant’s knowledge. Id.
In the instant case, the officers’ testimony indicates that defendant was sitting atop the firearm which had been stuffed into the crack of the seat. Although Ms. Singleton testified that it was her gun and that she had placed it under the front passenger seat without defendant’s knowledge, the supreme court’s decision in Allen makes clear that such facts do not preclude a finding that the firearm was subject to defendant’s dominion and control. Additionally, even if the jury believed Ms. Singleton left the weapon under the seat, the evidence indicates that the weapon was moved since it was ultimately discovered on the seat. Given the fact that defendant occupied the seat, it would be reasonable for a trier of fact to infer that defendant moved the gun. But, regardless of how the gun came to be on the seat, because defendant was essentially sitting on top of the weapon, a rational trier of fact could find defendant was aware of its presence, had easy access to it, |nand intended to possess it. Furthermore, the evidence does not indicate that the weapon was under the dominion and control of another occupant of the vehicle since the two other occupants each had a gun within their immediate control.
Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant was aware of the gun’s presence and that the gun was under his dominion and control, such that he constructively possessed the gun with a general intent to possess it.
This assignment of error lacks merit.

Assignment of Error Number One

In defendant’s first assignment of error, he argues that the State committed purposeful discrimination during jury selection when the prosecutor systematically struck African-American jurors without giving plausible race-neutral reasons for the strikes. As a result, defendant contends he is entitled to a new trial.
The Louisiana Constitution provides that an accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily and the number of challenges shall be fixed by law. La. Const. Art. 1, § 17. “In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant.” La.C.Cr.P. art. 799.
The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. *641 1712, 90 L.Ed.2d 69 (1986). The Batson decision is codified in La.C.Cr.P. art. 795(C), which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror. State v. Massey, 11-357, p. 20 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, 467, writ denied sub nom., State ex rel. Massey v. State, 12 911 (La.9/21/12), 98 So.3d 332. Article 795(C) further provides that if an objection is made that the State or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Id., 11-357 at 20-1, 91 So.3d at 467.
In Batson, the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of prospective jurors were based on race. Massey, 11-357 at 21, 91 So.3d at 467. Under Batson and its progeny, the defendant challenging the peremptory strike must first establish a prima facie case of purposeful discrimination. Id. 11-357 at 21, 91 So.3d at 467-8. Second, if a prima facie showing is made, the burden shifts to the State to articulate a neutral explanation for the challenge. Id. 11-357 at 21, 91 So.3d at 468. Third, the trial court then must determine if the defendant has carried the ultimate burden of proving purposeful discrimination. Id.
In the first step, to establish a prima facie case, the defendant must show: (1) the prosecutor’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. Massey, supra. This three-prong showing by the defendant gives rise to “the necessary inference of purposeful discrimination” by the prosecutor. Id. “The inference is ‘necessary’ because if such an inference cannot be drawn from the evidence presented by the defendant, he is unable to make a prima facie case of purposeful discrimination and his Batson challenge expires at the threshold.” Id. If the trial court determines the defendant failed to establish the threshold requirement of a prima facie case, |uthen the analysis is at an end and the burden never shifts to the prosecutor to articulate neutral reasons. Id.
However, a trial judge’s demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. Massey, 11-357 at 22, 91 So.3d at 468. In any case, after the State offers a race-neutral explanation for the peremptory challenge, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot. Id.
In determining whether the defendant has established a prima facie case of purposeful discrimination in the State’s use of its peremptory challenges, the trial court should consider all relevant circumstances, including any pattern of strikes by the State against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of the peremptory strikes was motivated by impermissible considerations, the composition of the venire and the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. Massey, supra. “The overall racial ... composition of the venire and *642 the jury ultimately seated is a significant factor often considered in determining whether a prima facie ease has been established because it provides a ‘point of reference.’ ” Id. (quoting State v. Holand, 10-325, pp. 10-1 (La.App. 4 Cir. 4/18/11), 64 So.3d 330, 336).
If the prima facie showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Massey, supra. This second step does not demand an explanation that is persuasive, or even plausible. Id. (citing Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam)). The race-neutral explanation must be one 112that is clear, reasonably specific, legitimate and related to the ease at bar. Id. At the second step of the Batson inquiry, the issue is the facial validity of the prosecutor’s explanation. Id., 11-357 at 23, 91 So.3d at 468 (citing Purkett, supra). Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race-neutral. Id.
Then, at the third step, the trial court must determine whether the defendant has established purposeful discrimination. Massey, 11-357 at 23, 91 So.3d at 469. It is at this third step that implausible explanations offered by the prosecution “may (and probably will) be found to be pretexts for purposeful discrimination.” Id. (quoting Purkett, 514 U.S. at 768, 115 S.Ct. at 1771). This final step of Batson involves evaluating the persuasiveness of the justification proffered, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. Id. (citing Purkett, 514 U.S. at 768, 115 S.Ct. at 1771). In determining whether a defendant has met his burden of showing purposeful racial discrimination in the State’s exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the State’s proffered race-neutral reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present. Id. Thus, the focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. Id. The Supreme Court has held “[i]f a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Id., 11-357 at 23-4, 91 So.3d at 469 (quoting Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)).
11<,A trial judge’s findings on a claim of purposeful discrimination are entitled to great deference by the reviewing court because they depend largely on credibility evaluations. Massey, 11-357 at 24, 91 So.3d at 469. Credibility can be measured by factors including the prosecutor’s demeanor, how reasonable or how improbable the explanations are, and whether the proffered reason has some basis in accepted trial strategy. Id. Because the trial judge has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors, the trial court occupies the best position for deciding whether a discriminatory objective underlies the peremptory challenges. Id. Indeed, “[t]he trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demean- or of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript.” Id. (quoting State v. Juniors, 03-2425, p. 32 (La.6/29/05), 915 So.2d 291, 319, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, *643 164 L.Ed.2d 669 (2006)). As a result, “[o]n appeal, a trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.” Id. (quoting Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008)).
The Supreme Court subsequently affirmed and applied the three-part Batson test in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) and Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). In Miller-El, the Supreme Court emphasized the trial judge’s responsibility to assess the plausibility of the prosecutor’s proffered race-neutral reason “in light of all evidence with a bearing on it.” Massey, 11-357 at 24-5, 91 So.3d at 469-70 (quoting Miller-El, 545 U.S. at 251-2, 125 S.Ct. at 2331-2). The Miller-El Court further stated:
|14A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
Miller-El, 545 U.S. at 252, 125 S.Ct. at 2332.
Subsequently, in discussing the third step of the Batson inquiry in Snyder, the Supreme Court stressed the trial judge’s pivotal role in determining the plausibility of the State’s race-neutral explanation. Massey, 11-357 at 25, 91 So.3d at 470. The Supreme Court explained that the third step requires the trial court to evaluate the prosecutor’s credibility by assessing “not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Id. (quoting Snyder, 552 U.S. at 477, 128 S.Ct. at 1208). Referencing its earlier decision in Miller-El, the Supreme Court again stressed that “all of the circumstances that bear upon the issue of racial animosity must be consulted” in determining whether the explanation given for the strike is convincingly race-neutral. Id. (citing Snyder, supra).
In the present case, the record indicates that the trial court called two venire panels. During the first venire, after the State exercised three peremptory challenges as to prospective jurors Billy Gip-son (Caucasian male), Wanda Hatfield (African-American female), and Felicia Strahan (African-American female), the defense raised a Batson challenge to the consecutive striking of two African-Americans. When prompted to provide a race-neutral reason for striking Ms. Hatfield, the State offered that “she works for Social Services and is more likely to be liberal and forgiving.” For Ms. Strahan, the State offered that “she’s a teacher, more likely to be liberal and forgiving.” And, because “teachers want to hear both sides, teachers want to hear more than one witness,” the State “generally cut[s] all | ^teachers ... whether they’re white or black.” The trial court found these reasons to be sufficiently race-neutral.
The State subsequently exercised two more peremptory challenges for prospective jurors Kimberly Kelly (Caucasian female) and Jocelyn Robinson (African-American female). The defense raised another Batson challenge to the striking of Ms. Robinson. Although not prompted by the court, the State offered its justification for striking Ms. Robinson on the fact that she stated “she would need more than just an identification^] [sjhe’d want to see more evidence other than just witness testimony.” The trial court found this to be a race-neutral reason.
*644 The State then exercised its sixth peremptory challenge for prospective juror Ronald Miller (African-American male). As this was the fourth African-American to be struck, the defense raised its third Batson challenge. The court requested the State to provide a race-neutral reason for striking Mr. Miller. The State explained that Mr. Miller was struck because “he said he needed more reasons ... he needed more than one witness.” Also, the State explained that Mr. Miller was “wearing sunglasses all during the proceedings[;] ... he just doesn’t seem to have respect for the Court.” The trial court found the State had provided a race-neutral reason.
The State exercised its seventh and final peremptory challenge against prospective juror Nieli Hebert (race not identified). The State did not exercise any peremptory challenges during the second venire. At the conclusion of voir dire, the 12-person petit jury that was empaneled included two African-American males.

Prospective Jurors Wanda Hatfield and Felicia Strahan

Defendant raised a Batson challenge to the peremptory strikes of pi'o-spective jurors Wanda Hatfield and Felicia Strahan on the basis that these two African-Americans were struck consecutively. Regardless of whether this amounted to relevant circumstances sufficient to raise an inference that the | ir,prosecutor struck these prospective jurors on the basis of their race, a trial judge’s demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. Massey, supra. Accordingly, here, when the court requested race-neutral reasons for these strikes, the court implicitly found the third prong for establishing prima fa-cie purposeful discrimination had been satisfied. As a result, the burden shifted to the State to articulate a race-neutral explanation for the challenge. Regarding Ms. Hatfield, the State explained she was struck because “she works for Social Services and is more likely to be liberal and forgiving.” For Ms. Strahan, the State explained she was struck because “she’s a teacher, more likely to be liberal and forgiving.” And, because “teachers want to hear both sides, teachers want to hear more than one witness,” the State “generally cut[s] all teachers ... whether they’re white or black.”
The Louisiana Supreme Court has recognized that a prospective juror’s employment field may be a sufficiently race-neutral reason for a peremptory strike. State v. Jacobs, 09-1304 (La.4/5/10), 32 So.3d 227, 235, reh’g granted in part, 09-1304 (La.6/18/10), 37 So.3d 994 (“Prosecutors often have prejudices against having persons with certain jobs on the jury, i.e. teachers, ministers, accountants, etc.”); accord State v. Alexander, 03-1291, p. 9 (La.App. 5 Cir. 3/30/04), 871 So.2d 483, 489, writ denied, 04-1063 (La.10/1/04), 883 So.2d 1007 (finding denial of a Batson challenge was not an abuse of discretion when prosecutor based his challenge on the prospective juror’s employment with the Department of Social Services); State v. Duplessy, 03-185, pp. 7-8 (La.App. 5 Cir. 7/29/03), 853 So.2d 77, 81-2, writ denied, 03-2416 (La.2/6/04), 865 So.2d 739 (finding denial of a Batson challenge was not an abuse of discretion when prosecutor based his challenge on the prospective juror’s occupation as a social worker at Ri-varde |17.Juvenile Detention Center, and might feel more biased toward rehabilitation than punishment); State v. Wilson, 09-170, pp. 12-3 (La.App. 5 Cir. 11/10/09), 28 So.3d 394, 405, writ denied, 09-2699 (La.6/4/10), 38 So.3d 299 (finding denial of a Batson challenge was not an abuse of *645 discretion when prosecutor based his challenge on the prospective juror’s occupation as a teacher as well as the fact that the prospective juror had a family member who had been arrested for a domestic dispute); State v. Toussaint, 98-1214, p. 8 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 965, writ denied sub nom., State v. Touissant, 750 So.2d 980 (La.11/24/99) (finding denial of a Batson challenge was not an abuse of discretion when prosecutor based his challenge on the prospective juror’s occupation as a history teacher, the fact that there was already one history teacher on the jury, and the prosecution did not want another one).
Here, the State explained that it struck Ms. Hatfield and Ms. Strahan on account of their employment fields, which are indicative of a liberal and forgiving temperament. Weighing the State’s race-neutral explanation against defendant’s prima facie showing, the trial court was evidently not satisfied that defendant had carried his burden in showing purposeful discrimination. Therefore, in view of the foregoing, and giving great deference to the trial court, we conclude that the trial court properly rejected defendant’s Batson challenge regarding Wanda Hatfield and Felicia Strahan.

Prospective Juror Jocelyn Robinson

Defendant’s next Batson challenge was in response to the State’s peremptory strike of prospective juror Jocelyn Robinson. Despite not being prompted by the court to provide a race-neutral explanation, the State explained it struck Ms. Robinson because she had stated witness testimony alone would be | ^insufficient for her to find guilt beyond a reasonable doubt; she would want to see additional evidence.
Although it appears no Louisiana court[8] has addressed this precise issue, other courts have found that a prospective juror’s holding the State to a higher burden of proof is a valid race-neutral reason for a peremptory strike. See State v. Kendall, 123 Conn.App. 625, 2 A.3d 990, 1018 (2010); Blanton v. State, 886 So.2d 850, 874 (Ala.Crim.App.2003), cert. denied, 886 So.2d 886 (Ala.2004), cert. denied, Blanton v. Alabama, 543 U.S. 878, 125 S.Ct. 119, 160 L.Ed.2d 131 (2004).
Here, the trial court did not find that defendant carried his burden in showing purposeful discrimination on the basis of Ms. Robinson’s race, finding the State’s explanation to be race-neutral. We agree with the trial court’s finding and further find that the trial court properly upheld the State’s exercise of its peremptory challenge as to Ms. Robinson.
For the first time on appeal, defendant asserts that Ms. Robinson was struck on account of her race because another prospective juror, Nicholas Tartaglia (presumably a Caucasian male), was retained on the petit jury despite offering an answer similar to Ms. Robinson’s regarding the State’s burden of proof. Because this assertion of discrimination was not presented to the trial court in his original prima facie *646 showing, he cannot now present it for the first time on appeal. La.C.Cr.P. art. 841. However, even had defendant presented this argument to the trial court at the time of his Batson challenge, the record reflects that Mr. Tartaglia’s |1fland Ms. Robinson’s responses were not the same as to show that Ms. Robinson was struck on the basis of race.
During voir dire, the prosecutor asked the venire panel: “[I]f you agreed and you believed what [a witness was] saying, you did not think [the witness] was lying, you thought [the witness] was telling the truth, would you still need something else?” Prospective juror Jocelyn Robinson responded as follows:
MS. ROBINSON:
I would need a little more, even though I probably would believe them, but I would need more like a witness or some kind of evidence showing that, you know—
[STATE]:
Physical evidence?
MS. ROBINSON:
Yes.
[STATE]:
All right. That’s what you would want to see?
MS. ROBINSON:
Yeah.
Prospective juror Nicholas Tartaglia responded: “A little bit. Beyond a reasonable doubt I’d like a little bit more, but I mean if your question is a hundred percent you believe that person, then you could go off of that.” Mr. Tartaglia was retained on the petit jury.
The Supreme Court has held that “[i]f a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Miller-El, supra.
We disagree with defendant’s assertion that Mr. Tartaglia’s response was the same as Ms. Robinson’s. Although Mr. Tartaglia at first indicated he would | gprequire more evidence than the testimony of one witness, he immediately withdrew from that position, indicating that if he believed the witness “a hundred percent,” he could find guilt beyond a reasonable doubt. On the other hand, Ms. Robinson did not withdraw from her stance of requiring more evidence. To the contrary, she stated that even if she did believe the witness, she would still require more evidence than witness testimony to find guilt beyond a reasonable doubt. Furthermore, prospective juror Kimberly Kelly, a Caucasian female, who also indicated that she would require more evidence than witness testimony, was peremptorily struck by the State.
As the foregoing makes clear, the State peremptorily struck Ms. Robinson and Ms. Kelly because each unequivocally indicated she would require more evidence than witness testimony to find guilt beyond a reasonable doubt. Conversely, Mr. Tartaglia equivocated before concluding that witness testimony would be enough to find guilt beyond a reasonable doubt. From this, we disagree that the prosecutor’s proffered reason for striking Ms. Robinson applied just as well to Mr. Tartaglia. In fact, the other prospective juror to whom the prosecutor’s proffered reason applied to as well was a Caucasian female who was also struck.
The trial court determined that defendant did not carry his burden in showing that the State’s strike of Ms. Robinson was on account of her race. Giving deference to this finding, we conclude that the trial court was not clearly erroneous in reject *647 ing defendant’s Batson challenge regarding Joeelyn Robinson.

Prospective Juror Ronald Miller

Defendant’s third and final Batson challenge was directed toward the State’s striking prospective juror Ronald Miller. When the State struck Mr. Miller, the defense alleged racial discrimination on account of the fact that Mr. Miller was the fourth African-American to be struck by peremptory challenge. The court then ^requested the State to provide a race-neutral explanation for the strike. As a result, the burden shifted to the State to articulate a race-neutral explanation for the challenge. The State explained that Mr. Miller was struck because he said he needed more than one witness to find guilt beyond a reasonable doubt. The State also contended that the casually-clad Mr. Miller, in sunglasses and shorts, did not have respect for the court.
We find that the trial court did not abuse its great discretion in finding that the State provided a race-neutral explanation for its peremptory challenge of Mr. Miller. As articulated previously, a prospective juror’s holding the State to a higher burden of proof than required by law is a valid race-neutral reason for striking that juror. Kendall, supra; Blanton, supra. Additionally, in State v. Williams, 545 So.2d 651, 654-5 (La.App. 5 Cir.1989), writ denied, 556 So.2d 53 (La.1990) and writ denied, 584 So.2d 1157 (La.1991), this Court found a prospective juror’s wearing sunglasses in the courtroom, indicative of disrespect for the court, was a valid race-neutral explanation for striking that juror.
Accordingly, this assignment of error lacks merit.

Assignment of Error Number Two

In defendant’s second assignment of error, he argues that the failure of the court to accommodate petit jury member, Ernest Frederick, who was hearing-impaired, denied defendant a properly constituted jury, warranting a new trial.
During jury selection, the following discussion occurred regarding Mr. Frederick:
THE COURT:
Mr. Frederick.
[STATE]:
He’s acceptable, although I think he would need to sit in the front row and really pay attention.
^[DEFENSE]:
He had some real hard times hearing.
[STATE]:
What I think about him is I think the disability gives him a right to sit, if we can accommodate him.
THE COURT:
It does.
[STATE]:
And I think we can accommodate him by having him sit in the front row and raise his hand anytime he’s not hearing something.
THE COURT:
Or I could put him so that he’s seated next to the witness stand, or seated up here.
[DEFENSE]:
Whatever we need to do.
[STATE]:
Anyway, we don’t think he can be challenged for cause.
THE COURT:
He cannot.
[STATE]:
And we keep him.
[DEFENSE]:
I’m okay with him.
THE COURT:
All right.
*648 La.C.Cr.P. art. 841(A) requires that “[an] irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence ...” This Court has held that to preserve the right to seek appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. State v. Smith, 11-638, p. 14 (La.App. 5 Cir. 3/13/12); 90 So.3d 1114, 1123.
123Here, defendant’s failure to object to or articulate any reservation regarding Mr. Frederick’s serving on the petit jury precludes an objection from being raised for the first time on appeal. This is supported by the contemporaneous objection rule and this Court’s holding that a defendant waives his right to review of irregularities in the selection of the jury when no objection is lodged in a timely manner. State v. Cheatteam, 07-272 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 745.
Accordingly, this assignment of error is not preserved for review and shall not be considered on appeal.
Moreover, the record was reviewed for errors patent pursuant to La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Accordingly, we find no errors requiring corrective action.

DECREE

Considering the foregoing, we affirm defendant’s conviction and sentence.

AFFIRMED

. Co-defendant, Myron Soublet, was also charged in the same bill of information with possession of a firearm, while in possession of a controlled dangerous substance, in violation of La. R.S. 14:95(E).

. Officer Campos testified that defendant initially gave his name as Brent Florant, but ultimately admitted that his name was Maurice Florant.

. A receipt for the weapon from BJ's Pawn Shop was introduced into evidence.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Accordingly, we address the sufficiency of the evidence before defendant's other assignments of error.

. It is noted that manslaughter is a crime of violence pursuant to La. R.S. 14:2(B)(4) and is a felony pursuant to La. R.S. 14:2(A)(4) and La. R.S. 14:31(B).

. La. R.S. 14:10(2) provides that “[g]eneral criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.”

. It is noted that in Storks, the defendant was charged with possession of a firearm by a convicted felon, but was convicted of the responsive verdict of attempted possession of a firearm by a convicted felon. Storks, 02-754 at 2, 836 So.2d at 639. Attempted possession of a firearm by a convicted felon requires the State to prove that the defendant had the specific intent to possess the weapon and that he committed an overt act towards the completion of that offense. Storks, 02-754 at 5, 836 So.2d at 640. (Emphasis added ). Pursuant to settled jurisprudence, this Court determined that because the defendant had failed *640 to object to the jury charges including the responsive verdict of attempted possession of a firearm by a convicted felon, he was entitled to a reversal of his conviction for the lesser offense only if the evidence was insufficient to support a conviction for the charged offense. Id., 02-754 at 6, 836 So.2d at 641. Accordingly, this Court conducted a sufficiency analysis in regard to the charged offense of possession of a firearm by a convicted felon and determined that the evidence was sufficient to support the charged offense. Id., 02-754 at 7-9, 836 So.2d at 641-3.

. However, the second circuit seems to have indirectly found that a prospective juror’s holding the State to a higher burden of proof is a valid race-neutral reason for a peremptory strike. In State v. Higginbotham, 46,975 (La.App. 2 Cir. 4/25/12), 122 So.3d 1, 2012 WL 1414271, the defendant argued on appeal that a Batson violation had occurred when the State exercised peremptory challenges against five African-American prospective jurors. Id. On rehearing, the second circuit found that the trial court did not err in rejecting the defendant’s Batson challenges. Id. In so doing, the court noted that one prospective juror's wife, who was also on the venire panel, had stated during voir dire that she would hold the State to a higher burden of proof. Id. The second circuit found that this was a sufficiently race-neutral reason for striking the husband. Id.